528 F.Supp.2d 1020 (2007)
Anthony PENTON, Petitioner,
v.
Scott KERNAN, Warden, Respondent.
No. 06cv233 WQH (PCL).
United States District Court, S.D. California.
December 20, 2007.
*1021 *1022 *1023 *1024 *1025 *1026 *1027 Anthony Penton, Represa, CA, Pro se.

ORDER
HAYES, District Judge:
The matters pending before the Court are (1) the review of the Report and Recommendation (Doc. # 36) filed on August 31, 2007 by the United States Magistrate Judge Peter C. Lewis, (2) the Motion for Order Extending Time for Appeal (Doc. # 38), and (3) the Motion for Order Directing Litigation Coordinator at C.S.P. SAC "Linda Young" to Grant Petitioner (8) Hours a Week Law Library Access. (Doc. # 43).
I. Background
On October 2, 2006, Petitioner Anthony Penton filed an Amended Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. (Doc. # 21). On March 28, 2007, Respondent filed an Answer to the Petition. (Doc. # 28). On August 17, 2007, Petitioner filed a Traverse to Respondent's Answer. (Doc. # 35). On August 31, 2006, United States Magistrate *1028 Judge Lewis issued a Report and Recommendation recommending that this Court deny habeas corpus relief. (Doc. # 36). The parties were ordered to file objections to the Report and Recommendation on or before September 21, 2007.
On September 27, 2007, Petitioner filed a Motion for Order Extending Time to File Objections to Report and Recommendation. (Doc. # 40). The Court granted the Motion and extended the time to file objections to the Report and Recommendation to November 7, 2007. (Doc. # 41). Neither party filed objections to the Report and Recommendation.
On September 27, 2007, Petitioner filed a "Motion for Order Extending Time for Appeal." (Doc. # 38).
On October 22, 2007, Petitioner filed a "Motion for Order Directing Litigation Coordinator at C.S.P. SAC `Linda Young' to Grant Petitioner (8) Hours a Week Law Library Access." (Doc. # 43).
II. Review of the Report and Recommendation
The duties of the district court in connection with a Report and Recommendation of a Magistrate Judge are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). When the parties object to a Report and Recommendation, "[a] judge of the [district] court "shall make a de novo determination of those portions of the [Report and Recommendation] to which objection is made." 28 U.S.C. § 636(b)(1); see Thomas v. Arn, 474 U.S. 140, 149-50, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). When no objections are filed, the district court need not review the Report and Recommendation de novo. Wang v. Masaitis, 416 F.3d 992, 1000 n. 13 (9th Cir.2005); United States v. Reyna-Tapia, 328 F.3d 1114, 1121-22 (9th Cir.2003) (en banc). A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1).
Neither party objected to the Magistrate Judge's Report and Recommendation in this case, and this Court has reviewed the Report and Recommendation in its entirety. The Court concludes that the Magistrate Judge correctly determined that the denial of Petitioner's motion for new trial did not violate his right to confrontation or due process as protected by the United States Constitution; that enhancing Petitioner's sentence based on his strike prior conviction did not violate the Ex Post Facto Clause of the United States Constitution; that California's Three Strikes law is not void for vagueness; that there was sufficient evidence presented at trial to convict Petitioner; that Petitioner's trial and appellate counsel were not ineffective; that the trial judge's imposition of upper terms for Petitioner's sentence did not violate Petitioner's right to due process or trial by jury as protected by the United States Constitution; that Petitioner is procedurally barred from attacking the validity of his prior conviction in this Court; that Petitioner has not shown that prosecutorial misconduct deprived him of exculpatory evidence and caused him prejudice[1]; and that the trial court's exclusion of evidence was a reasonable application of Supreme Court authority. The Court *1029 therefore adopts all portions of the Report and Recommendation.
III. Review of the Motion for Order Extending Time for Appeal
Petitioner "moves the Court for an order extending the time for appeal to the United States Court of Appeals] for the Ninth Circuit to and including December 7, 2007 on the grounds of excusable neglect." (Doc. # 38).
Petitioner bases his Motion on Rule 4(a) of the Federal Rules of Appellate Procedure, which prescribes the time limits for appealing judgments, orders or other decisions of the court in a civil case. Fed. R.App. P. 4(a). The Court construes the Motion in favor of Petitioner. See Karim-Panahi v. Los Angeles Police Dep't., 839 F.2d 621, 623 (9th Cir.1988). The Court denies the Motion for Order Extending Time for Appeal as unripe because the Motion fails to reference any existing judgment, order or other decision of the Court that Petitioner wishes to appeal, but is precluded from appealing in light of the time limits prescribed in Rule 4(a).
IV. Review of the Motion for Order Directing Litigation. Coordinator at C.S.P. SAC "Linda Young" to Grant Petitioner (8) Hours a Week Law Library Access
Petitioner contends that he is currently entitled to two hours a week of law library access which is inadequate in light of his pending habeas petition and because he has been forced to gather outdated information which has negatively impacted his Motion for Extension of Time to File Objections to the Report and Recommendation and Motion for Order Extending Time for Appeal. Petitioner moves the Court for an order directing the authorities at the prison where he is incarcerated to allow him eight hours a week of law library access until he fully exhausts his habeas petition in the federal district and circuit courts.
"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates with the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). However, the problems of prison administration and reform are "complex and intractable . . . and are not readily susceptible of resolution by decree. . . . When a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities." Procunier v. Martinez, 416 U.S. 396, 404-405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1973). "There is no minimum requirement that a state must meet in order to provide indigent prisoners with meaningful access to the courts." King v. Atiyeh, 814 F.2d 565, 568 (9th Cir.1987). In order to show a violation of the right of access to the courts, the prisoner must allege "actual injury" which occurs when an prisoner "demonstrate[s] that the alleged shortcomings in the law library or legal assistance program hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).
The Court has extended the time for Petitioner to prepare and submit various filings related to his Petition. Petitioner has not specified any additional research that is necessary at this stage. Petitioner has also failed to demonstrate that additional access to the law library would have *1030 prevented injury to his Motion for Extension of Time to File Objections to the Report and Recommendation, which the Court granted, or the Motion for Order Extending Time for Appeal, which, as previously discussed, the Court did not deny based on a lack of critical legal' information that Petitioner could have obtained through additional legal research. At this stage of the proceedings and in light of the deference accorded to prison authorities, the Court declines to order "Litigation Coordinator at C.S.P. SAC Linda Young" to grant Petitioner eight hours a week of law library access.
V. Conclusion
IT IS HEREBY ORDERED that all portions of the Report and Recommendation filed on August 31, 2007 (Doc. # 36) are ADOPTED and the Amended Petition for Writ of Habeas Corpus (Doc. # 21) is DENIED. It is further ordered that the Motion for Order Extending Time for Appeal (Doc. # 38) is DENIED. It is further ordered that the Motion for Order Directing Litigation Coordinator at C.S.P. SAC "Linda Young" to Grant Petitioner (8) Hours a Week Law Library Access (Doc. # 43) is DENIED.
REPORT & RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS
PETER C. LEWIS, United States Magistrate Judge.

I. INTRODUCTION
On January 31, 2006, Anthony Penton ("Petitioner"), a state prisoner proceeding pro se, filed a Petition for Writ of Habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) A. Malfi[1], Warden, ("Respondent") moved to dismiss the petition for failure to exhaust state court remedies on four of Petitioner's claims, (Doc. No. 9), and this Court issued a Report and Recommendation finding Petitioner's twelfth and thirteenth claims unexhausted. (Doc. No. 18.) On October 6, 2006, Petitioner filed a First Amended Petition ("Petition") presenting only exhausted claims (Doc. No. 21.) On March 28, 2007, Respondents filed an Answer to the Petition along with a Memorandum of Points and. Authorities in support thereof, (Doc. No. 28 at Part 1, 3), and lodged portions of the state court record ("Lodgment"). (Id. at Part 4.) Petitioner lodged portions of the state court record on May 4, 2007. (Doc. No. 29.) Petitioner also filed a Traverse ("Trav."). (Doc. No. 35.) After reviewing the Petition, Respondent's Answer, and Petitioner's Traverse, this Court recommends[2] that Petitioner be DENIED habeas corpus relief.

II. FACTUAL BACKGROUND & STATE PROCEEDINGS
A. The Attempted Robbery and the Car Chase
On June 26, 1999, two black males attempted to rob Symbolic Motors ("Symbolic"), (Lodgment 11 at 1), a car dealership in La Jolla, California. (Lodgment 2 at 43.) In the course of the perpetrators' unsuccessful attempt to obtain the keys to Symbolic's safe, they "attempted to rob, imprison, and terrorize five Symbolic employees, *1031 one customer, and two daughters of one of the employees." (Lodgment 11 at 1.) The perpetrators held the various Symbolic employees at gunpoint and compelled them to move to the back of Symbolic's showroom, forcing them to lie face down on the floor. (Lodgment 2 at 106-111.) They took a car key out of a victim's pocket. (Lodgment 5 at 6.) A few victims saw one of the perpetrators use a cellular phone several times while they attempted to rob Symbolic. (Lodgment 2 at 325-28; 43-5.)
At one point during the attempted robbery, the perpetrators forced a. Symbolic employee and his daughters to an upstairs area. (Lodgment 2 at 159, 320-323.) Once there, one perpetrator removed two handguns and duct tape from a plastic bag he was carrying, and taped the employee's arms behind his back. (Id.) He then remained upstairs with the children[3] and the employee while the other Perpetrator went back downstairs. (Id.) Approximately one-half hour later, one of the employees in the downstairs area ran out of Symbolic, and the perpetrators fled the building shortly after. (Lodgment at 112-15, 157, 165.) Another employee within Symbolic then dialed 911 on her cell phone. (Lodgment at 165.) When the police arrived at the scene, the perpetrators were not at Symbolic. However, a field evidence technician recovered a plastic bag in the upstairs area of Symbolic. Edward Jones' fingerprints were found on the bag. (Lodgment. 2 at 176, 184-85, 245-46.)
A few days later, on June 29, 1999, San Diego Police Officer Andrew Spears spotted Jones speeding in a tan rental car at 10:00 a.m. (Doc. No. 21 at 164.) When Spears approached Jones in his police car, Jones sped up and turned into an alley. Spears turned on his lights and sirens and pursued Jones. (Lodgment 2 at 264-65.) While in pursuit, Spears saw Jones throw a gun out of the window of his car. Spears eventually stopped Jones and placed him under arrest at 10:02 a.m. (Doc. No. 21 at 161.)
B. Police Investigation
After Jones' arrest, the police conducted a search of the tan rental car and found a holster under the driver seat that fit the gun Jones' threw out the window. (Lodgment 2 at 266-67.) Police also determined that Petitioner had rented the tan rental car three weeks prior to the robbery incident at Symbolic. (Lodgment 2 at 259, 265.) About one and half hours after Jones' arrest, Petitioner called the police. He gave a statement claiming that the rental car was stolen and that he had called Enterprise Rental Car prior to calling the police. (Doc. No. 21 at 162.) Petitioner stated that on June 29, 1999, before Jones' arrest, he and Jones drove to Fam-Mart. Petitioner claims that he left Jones with the car and went in the store to buy a shirt. (Id.) When Petitioner returned from the store, the car was gone. (Id.) Police also interviewed an employee of Fam-Mart. The employee stated that on June 29, 1999, Fam-Mart opened at 10:00 a.m. and that he saw a black male enter sometime after the store opened. (Id. at 163.) He also stated that the black male did not tell him his car was stolen until 10:45 a.m. (Id.) The police officer who made the report stated in the report that he did not believe Petitioner's story. (Id. at 162-63.)
In further investigating the robbery, police detective Johnny Keene obtained records of phone calls made during the morning of the Symbolic incident. (Lodgment 2 *1032 at 282-294, 304.) He learned that thirty-two phone, calls had been made between two cell phone numbers in the La Jolla area before, during, and after the robbery. (Id.) The two phone numbers belonged to two people, Crini Ornelas and Tim Walker. However, while investigating the social security and driver's license numbers given to the cell phone company by these two individuals, Keene discovered that the numbers did not match the name Tim Walker, and suspected that the name was an alias. (Id.) Keene contacted Crini Ornela. She stated that she had never subscribed to a cell phone. He reviewed other phone numbers which the cell phone numbers called, and determined that the Crini Ornelas cell phone had called two of Petitioner's cell phones. Keene deter mined that Tim Walker's cell phone number had called Petitioner's home phone numbers in Victorville and Phoenix. (Id. at 282-294, 308-09.)
Keene executed a search warrant at Petitioner's home and found a tablecloth with Petitioner's nickname and the alias' cell phone number written on it. Police found a box of .45-caliber ammunition and a key chain with the logo for Enterprise Rental Car, which listed the make, model, and license plate number of the tan rental car Jones was driving when he was arrested. (Lodgment 2 at 303-06.) They also, found a California Identification Card that had Petitioner's picture, but listed the name "Tony Lamont Walker." (Id. at 310.)
Two victims of the Symbolic robbery were able to identify Petitioner and Jones as Perpetrators in photographic lineups and live lineups. (Lodgment 2 at 60-72, 335-43.) However, three other victims were unable to identify either Jones or Petitioner in lineups. (Lodgment 2 at 138-41, 115-18, 165.)
The police also learned that Petitioner was possibly staying at the address 4168 Lochlomond, in the Kearny Mesa area of San Diego during August of 1999. (Lodgment 1 at 426.) They maintained surveillance of the area until they saw a black male, who looked like Petitioner, get into a car and drive off. The police confirmed the person's identity with a neighbor and arrested the person. However, once the police detained him, they discovered that the black male was not Petitioner but a man named Thess Good. (Lodgment 1 at 427.) Good was an ex-convict with a history of arrests for burglary, felony assault, attempted murder, auto theft, and possession of firearms. (Id.) After questioning Good, the police found out that Good was a friend of Petitioner. Good eventually agreed to help the police find Petitioner. (Id.) Good called Petitioner, who had left the city, and asked him to come to San Diego. (Id.) Petitioner refused to return. Nonetheless, the police were able to get two of Petitioner's phone numbers through Good. (Id.)
C. Court Proceedings
On November 1, 2000, Petitioner was charged in an amended information, in case number SCD 147553, with one count of Robbery and five counts of Attempted Robbery in violation of California Penal Code ("Penal Code") section 211, and two counts of False Imprisonment by Violence, Menace, Fraud, Deceit in violation of Penal Code section 236 and 237(a). (Lodgment 1 at 24-28.) The amended information also alleged that Petitioner personally used a fire arm in violation of section 12022.5(a)(1) during the commission or attempted commission of all of the above crimes. (Id.) In addition, the amended information alleged that Petitioner was convicted of two prison priors pursuant to Penal Code sections 667.5(b) and 668, one of which is a serious felony and strike prior under California's Three Strikes law pursuant to Penal Code sections 667.5(b), 668, 1192.7(c), and 1170.12. (Lodgment 1 *1033 at 28-29.) Petitioner waived formal reading of the information, pleaded not guilty, and denied all allegations and priors. (Lodgment 1 at 248.)
The trial began on November 1, 2000. (Lodgment 1 at 248.) Prior to the presentation of evidence, the attorney for the state moved to exclude from the trial Petitioner's statement regarding his call to report the tan rental car stolen. (Lodgment 2 at 6.) Petitioner acknowledged that the statement was hearsay, but argued that it was potentially exculpatory evidence and should be admitted. (Lodgment 5 at 9.) The court ruled that the statement amounted to inadmissible hearsay, and reasoned Petitioner could take the stand and testify about the statement if he wished. (Lodgment 2 at 8.) The court ruled to exclude the statements from trial. (Id.)
Several victims of the Symbolic incident testified on behalf of the prosecution. The two victims who identified Petitioner and Jones as the perpetrators in lineups also identified them at trial. (Lodgment 2 at 60-72, 335-43.) One of the victims, who was unable to identify Petitioner at a photographic lineup, was able to identify him at trial. (Lodgment 2 at 138-41.) The two other victims who testified could not identify Petitioner at trial. (Lodgment 2 at 115-18, 165.)
The victims who testified also described the perpetrators. One of the victims who identified Petitioner as the taller perpetrator; described Petitioner as a tall, thin, and nicely dressed black man. (Lodgment 2 at 44.) She recalled Petitioner to have been about 6 feet, 2 inches, 200 pounds when the robbery took place. (Id. at 53.) There were minor discrepancies in other victims' descriptions of the taller perpetrator's height and weight. Some victims guessed that he was around 6 feet tall when they saw him during the Symbolic robbery, while another guessed he was 6 feet, 4 inches tall. (Id. at 107, 134, 336.) One victim testified that he was "not skinny, not heavy", (Id. at 156), while another described him as tall and skinny. (Id. At 336.) Some of the victims testified that they recalled seeing the taller perpetrator use a cell phone several times during the robbery. (Id. at 43-45; 325-28.)
Detective Johnny Keene also testified on behalf of the prosecution, divulging information he had discovered concerning the Symbolic incident, Petitioner, and Edward Jones to the court and jury. (Lodgment 2 at 280-318.)
Scott Fraser, Ph.D., a neurophysiologist, testified on behalf of Petitioner and stated that research indicated the type of identification made in this case could be inaccurate. However, Fraser could not say whether the eyewitnesses in this case accurately identified Petitioner and Jones. (Lodgment 2 at 384-85.)
On November 8, 2000, the jury found Petitioner guilty on all counts, (Lodgment 1 at 105-112), and the trial court found true that Petitioner had been convicted of the priors alleged in the information[4], (Lodgment 1 at 257.) After considering prior convictions pursuant to California's Three Strikes Law and aggravating factors in the commission of the crime pursuant to California's Determinate Sentencing Law[5], the judge sentenced Petitioner to 54 *1034 years and 8 months in state prison. (Lodgment 1 at 440.)
Jones filed a motion for a new trial. (Lodgment 5 at 9.) Jones' wife's sister, Janice Thomas, testified on his behalf at the motion hearing. (Lodgment 2 at 630-41.) She testified that she dated Petitioner at the time of the car chase and the Symbolic incident. (Id.) She further stated she informed Petitioner of Jones' arrest on June 29, 1999, in the afternoon, and Petitioner thereafter told her that he was going to report the car stolen. The court denied Jones' motion. (Id.)
Like Jones, Petitioner also filed a motion for a new trial. (Lodgment 1 at 388.) Petitioner claimed that the prosecution did not timely disclose portions of a police report, which contained a statement by Petitioner claiming that he had called to report his rental car stolen. (Lodgment 5 at 11.) Petitioner's motion was argued and heard before the court in a proceeding separate from Jones'. (Lodgment 1 at 461.) The trial court, after considering the testimony given by Janice Thomas at Jones' hearing, denied Petitioner's motion for a new trial. (Id.) The trial court, concluded that Thomas's testimony effectively showed Petitioner's theory, that Jones stole the car from him, made no sense. (Lodgment 2 at 711-14.) While the trial court did not believe Thomas was credible, it concluded that Petitioner had a chance to develop his theory simply by testifying. Moreover, the court found that Jones could have done the same thing by testifying and calling Thomas to testify during trial. (Id.) The jury then could have determined Thomas's credibility. Because the opportunity for Petitioner to develop his theory was available and he simply chose not to testify, the trial court denied Petitioner's motion for new trial. (Id.)
Petitioner appealed to the California Court of Appeal, Fourth Appellate District, Division One. (Lodgment 3.) On October 2, 2002, the Court of Appeal reduced Petitioner's sentence to 52 years and 8 months in state prison, but otherwise affirmed the judgment. (Lodgment 5.) Petitioner filed a Petition for Review in the California Supreme Court, (Lodgment 6), but the petition was denied on January 15, 2003. (Lodgment 7.)
On April 11, 2004, Petitioner filed a Petition for Writ of Habeas Corpus in the San Diego County Superior Court. (Lodgment 8) On May 5, 2004, the court denied the Petition. (Lodgment 9). Petitioner then filed a Petition for Writ of Habeas Corpus in the California Court of Appeals, Fourth Appellate District, Division One, on August 3, 2004, but that court denied the Petition in a reasoned opinion on September 14, 2004. (Lodgment 10, 11.) Finally, Petitioner filed a Petition for a Writ of Habeas Corpus with the California Supreme Court on November 8, 2004, (Lodgment 12), and filed two Supplemental Petitions for the court to consider. (Lodgment 13, 14.) Petitioner also filed a motion with the Superior Court in California, requesting trial transcripts for his 1988 prior conviction. However, the Superior Court denied his motion. (Doc. No. 21 at 79-88.) The California Supreme Court denied all Petitions without out comment or citation on January 18, 2006. (Lodgment 15.)

III. STANDARD OF REVIEW
Under United States law, a federal district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a).
The application for such a writ should be granted only in two circumstances. First, the writ should be granted if the adjudication of the claims in state *1035 court "resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254(d)(1). A state decision is contrary to Supreme Court authority only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. Williams (Terry) v. Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision unreasonably applies Supreme Court authority, if it correctly identifies the governing legal principle from Supreme Court precedents but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413, 120 S.Ct. 1495. However, an unreasonable application of the law is different from an incorrect application of the law.
Habeas corpus relief may not be granted simply because the state court applied "federal law erroneously or incorrectly." Taylor, 529 U.S. at 411, 120 S.Ct. 1495. A petitioner must also show that the application was a result of an unreasonable analysis of federal law. Id., Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002). While a state court's conflict with "Ninth Circuit precedent on a federal Constitutional issue" is insufficient to warrant a grant of the writ, they may be "persuasive authority for purposes of determining whether a particular state court decision is an `unreasonable application' of Supreme Court law." Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir.2000) (citing Moore v. Calderon, 108 F.3d 261, 264 (9th Cir.1997)). Even when a state court has either ruled contrary to, or unreasonably applied, federal law, a petitioner still must show that the court's decision had "substantial and injurious effect or influence in determining the jury's verdict" so as to cause actual prejudice. Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993.) In other words, but for the state's erroneous conclusions or application of the law, the petitioner would have received a more favorable outcome.
Second, the writ should be granted if the adjudication of the claims in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C.A. § 2254(d)(2). However, federal habeas corpus cannot be utilized to try state issues de novo, Milton v. Wainwright, 407 U.S. 371, 377, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); factual determinations by the state court are presumed reasonable "absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 323, 123 S.Ct. 1029, 1032, 154 L.Ed.2d 931 (2003); see Sumner v. Mata, 449 U.S. 539, 545-47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) (stating that deference is owed to factual findings of both state trial and appellate courts). Thus, a petitioner's conclusory allegations unsupported by facts from the record are insufficient to warrant habeas corpus relief. Boehme v. Maxwell, 423 F.2d 1056, 1058 (9th Cir. 1970.) Even if the state court's factual determination is flawed, an application of a writ of habeas corpus should not be granted unless an error "resulted in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962).
When reviewing the merits of a petitioner's habeas corpus claim, a federal court should look to the last reasoned state court opinion as the basis of the state court's decision. Robinson v. Ignacio, 360 F.3d 1044, 1045 (9th Cir.2004). If the state court decides a claim on the merits but does not provide a reasoned opinion *1036 for their decision, the federal court should independently review the record to determine the merits of that claim. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir.2000). However, even when independently reviewing a claim, the federal court must "still defer to the state court's ultimate decision." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir.2002)

IV. DUE PROCESS & RIGHT TO CONFRONTATION
Petitioner alleges that his federal constitutional right to confrontation was violated when the court considered Janice Thomas's testimony, given in a separate hearing, in denying his motion for a new trial. (Doc. No. 21 at 13-21; Tray. at 1-13.)
Petitioner further alleges that his constitutional right to due process was violated when the court denied his motion for a new trial. He contends the prosecution did not timely disclose to defense counsel a portion of a police report, which contained a statement made by Petitioner claiming that the rental car Jones was driving at the time of his arrest was stolen. (Id.) Petitioner claims that the report is exculpatory evidence, and that if Petitioner had the report earlier, he could have better prepared a defense. (Id.) Petitioner maintains that because failure to disclose the report was a due process violation during trial proceedings, the trial court should have granted the his motion for a new trial. He claims the denial of his new trial motion was therefore a violation of due process.
The California Supreme Court rejected both claims without comment. (Lodgment 15.) However, the state appellate court rejected both claims in a reasoned opinion on direct appeal. (Lodgment 5.) This Court considers the reasoning developed in the state appellate court's opinion, Robinson, 360 F.3d at 1045, and finds that the state court's rejection of these claims was not an unreasonable applications of, or contrary to, clearly established federal law as determined by the Supreme Court.
A. Confrontation
The Confrontation Clause of the Sixth Amendment provides that the accused has the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. The U.S. Supreme Court ("Supreme Court") explained that the primary object of the confrontation clause was to "prevent depositions or ex parte affidavits being used against the prisoner in lieu of a personal examination and cross-examination of the witness" at trial. Mattox v. U.S., 156 U.S. 237, 242, 15 S.Ct. 337, 39 L.Ed. 409 (1895). Cross-examination gives the accused an opportunity, not only to "test the recollection and [sift] the conscience of the witness," but also to compel "him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." Id. at 242-43, 15 S.Ct. 337. The. Confrontation. Clause, therefore, is designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination, Pennsylvania v. Ritchie, 480 U.S. 39, 52, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), and to use physical confrontation at trial to enhance "the accuracy of fact finding by reducing the risk that a witness will wrongfully implicate an innocent person." Maryland v. Craig, 497 U.S. 836, 846, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).
The Supreme Court held the right to be applicable to the states through the Fourteenth Amendment because the right to confrontation is "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional *1037 goal." Pointer v. State of Texas, 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). However, "the right to confrontation is a trial right," and thus does not apply to other court proceedings that are not part of the jury trial. See Ritchie, 480 U.S. at 52, 107 S.Ct. 989 (emphasis in original) (holding that a defendant does not have right to confrontation in a pretrial hearing).
In this case, Petitioner motioned for a new trial, claiming that the trial court errored when it excluded portions of a police report that contained Petitioner's statement about the tan rental car. Janice Thomas testified at Jones' hearing for his new trial motion. She claimed she informed Petitioner that Jones was arrested and, in response, Petitioner told her that he was going to call the police to report the tan rental car stolen. (Lodgment 5 at 9.) The trial court considered her testimony and denied Petitioner's motion for a new trial. (Lodgment 2 at 712.) Petitioner claims that he was deprived a chance to cross examine Thomas in his post-conviction, new trial motion hearing. (Doc. No. 21 at 13.) Petitioner maintains this violated his right to confrontation. (Id.) The appellate court rejected his claim, reasoning that Jones' wife's testimony was only a portion of the evidence considered by the court in denying Petitioner's motion for a new trial. (Lodgment 5 at 16.) The state appellate court explained, "[o]f primary importance was the fact that [Petitioner]'s report to police of the vehicle being stolen was within his own knowledge and he could have testified to these facts at trial. His election not to testify, however, rendered any claim of prejudice in the People's failure to turn over the actual report of no moment." (Id.)
In order to be entitled to habeas corpus relief, a petitioner must show that the state court's decision was an unreasonable application of, or contrary to, federal law, 28 U.S.C.A. § 2254(d)(1), and that the state court's conclusion prejudiced the petitioner. Brecht, 507 U.S. at 637, 113 S.Ct. 1710 (1993). The Court finds that Petitioner has failed to demonstrate either. First, Petitioner does not have a right to confrontation at a post-conviction new trial motion hearing because the right is a trial right. Ritchie, 480 U.S. at 52, 107 S.Ct. 989. He was not deprived of the opportunity to cross examine Janice Thomas at trial because she was not a witness. (Cf. Lodgment 2 at vi; Cf. Lodgment 2 at x.[6]) The jury did not consider Jones' wife's testimony, and their verdict was not influenced by her potentially inculpating statements. (Cf. Id.) Therefore, her testimony did not influence the jury to "wrongfully implicate an innocent person." Craig, 497 U.S. at 846, 110 S.Ct. 3157 (1990).
Second, assuming arguendo that Petitioner had a right to confrontation at his new trial motion hearing, Petitioner still is not entitled to relief because the failure to cross-examine Thomas did not prejudice him. Brecht, 507 U.S. at 637, 113 S.Ct. 1710 (1993). While the trial court considered Janice Thomas' "incriminating" statements, it found her untrustworthy. (Lodgment 2 at 711-14.) Therefore, the trial court did not deny Petitioner's motion because Thomas inculpated Petitioner. Rather, the trial court denied Petitioner's motion because he had a chance to develop his theory, even after the trial court excluded the police report of Jones' arrest from the trial. As the state appellate court explained, "[o]f primary *1038 importance was the fact that [Petitioner's report to police of the vehicle being stolen was within his own knowledge and he could have testified to these facts at trial." (Lodgment 5 at 16.) Regardless of Thomas's disbelieved testimony, the trial court would have come to the conclusion that Petitioner had the opportunity to testify about the events described in the police report, (Lodgment 5 at 16), and denied his motion. Because the failure to confront Janice Thomas did not result in a less favorable outcome for Petitioner, he was not prejudiced, and is not entitled to habeas corpus relief. Brecht, 507 U.S. at 637, 113 S.Ct. 1710.
B. Due Process
In a criminal case, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Therefore, the prosecution has a duty to disclose evidence that is materially favorable to the accused, even if the accused does not request it. Strickler v. Greene, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Favorable evidence encompasses both impeachment and exculpatory evidence. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Evidence favorable to the defendant is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the results of the proceeding would have been different." Id. at 682, 105 S.Ct. 3375.
Here, Petitioner claims the prosecution was late in disclosing portions of the police report of Jones' arrest. (Doc. No. 21 at 13-21.) The portion in question contained Petitioner's statement describing the events immediately preceding Jones' arrest[7]. (Doc. No. 21, 163.) While the disclosure was late, the trial court did not believe the tardiness amounted to a due process violation. The trial court thus rejected Petitioner's motion for a new trial. (Lodgment 2 at 708-14; Lodgment 5 at 11-12.) The appellate court applied the Brady standard and affirmed the trial court's judgment, reasoning: 1) Petitioner's counsel acknowledged that the police report was inadmissible hearsay; 2) Petitioner was obviously aware he made a statement and could have testified to it regardless of whether or not the prosecutor turned the report over to the defense; and 3) the information was not exculpatory for Petitioner. (Lodgment 5 at 14-16.) The court concluded that there was no reasonable probability the outcome of the proceedings would have been different had the police report been turned over punctually. (Id.)
The Court finds that the state appellate court reasonably applied federal law as determined by the Supreme Court. 28 U.S.C.A. § 2254(d)(1). First, defense counsel acknowledged that Petitioner's statement in the report was inadmissible hearsay. (Lodgment 5 at 15.) As such, even if that portion of the report was timely disclosed, it would not have been admissible. (Id.) Second, the information in the police report was available to Petitioner prior to its disclosure. (Id.) Petitioner knew what he had said to the police when he called to report the tan rental car *1039 missing. He, therefore, could have chosen to take the stand and tell the jury what happened between him and Jones prior to the car being stolen. Despite Petitioner's contention that his statement was exculpatory, he chose not to take the stand. (Id.)
Third, the California Court of Appeals reasonably concluded that the belatedly disclosed portion of the police report was not exculpatory. While the police report does include a statement that weakens the link between Jones and Petitioner, the statement was made by Petitioner, and upon scrutiny, appears to be untrustworthy. Petitioner's statement regarding the rental car is inconsistent with a statement given by the Fam-Mart employee within the same police report. (Doc. No. 21 at 163.). Petitioner stated that on June 29, 1999, he drove with Jones to Fam-Mart where his car was stolen; he had left Jones in the car and entered the store to buy a shirt. (Lodgment 1 at 404.) The Fam-Mart employee stated that a black male did not enter the store until sometime after the store opened at 10:00 a.m. Furthermore, the black male did not tell the employee that his car was missing until 10:45 a.m., approximately 45 minutes after Jones had been arrested. (Id.) Given that Spears spotted Jones at 10:00 a.m. and pursued him for a while before arresting him at 10:02 a.m., (Lodgment 1 at 264-65; Doc. No. 21 at 162-64.) Jones must have driven off from Fam-Mart sometime before 10:00 a.m., before Petitioner entered the store. Yet Petitioner insists that Jones drove off after he had entered Fam-Mart.
The timing of Petitioner's call to the police was also peculiar. The officer who wrote the police report stated that Petitioner called to report the car missing at about 11:30 a.m., approximately one and half hour after Jones was arrested. (Lodgment 1 at 264-65.) It was also approximately 45 minutes after he had told the Fam-Mart employee that his car was missing. (Lodgment 1 at 404.) In observing the timing of the call and the inconsistencies between the stories provided by the witnesses, it is apparent Petitioner contacted the police in an attempt to distance himself from Jones and the vehicle. Therefore, the court's conclusion, that Petitioner only called the police after learning of Jones was arrested, was reasonable. (Lodgment 5 at p.) Petitioner statement was more inculpatory than exculpatory, diminishing his credibility.
Regardless of the truth of Petitioner's assertions about the morning of June 29, 1999, the Symbolic incident occurred three days earlier. The report does not contradict that some of the Symbolic incident victims identified Petitioner as one of the perpetrators during the robbery on June 26, 1999. Nor does the report put in question other circumstantial evidence recovered during police's search of Petitioner's house[8]. Even assuming that Petitioner's story is true, Petitioner is still connected to Jones, who is connected to the crime scene. Therefore, the appellate court reasonably inferred that the untimely disclosed information was not exculpatory evidence because Petitioner's statement would not have refuted other inculpating evidence presented at trial.

V. EX POST FACTO CLAUSE
Petitioner argues that he obtained his strike prior conviction before California's *1040 Three Strikes law was enacted[9] and, therefore, enhancing his sentence because of his prior is a violation of the Ex Post Facto Clause of the U.S. Constitution. (Doc. No. 21 at 23; Trav. at 20-23.) Petitioner presented this claim, to the Superior Court of California, and that court rejected it in a reasoned decision. (Lodgment 9 at 3.) The Superior Court held that "the use of a prior conviction which predates the three strikes law to sentence a defendant under that law does not violate the ex post facto provisions of either the state or the federal constitution." (Lodgment 9 at 3.) Petitioner also presented this claim to the California Supreme Court in a writ of habeas corpus. The state high court rejected the claim without comment. (Lodgment 12 at 4 B, 13-14; Lodgment 15.) Therefore, the Court looks through to, and considers, the Superior Court's decision. Robinson, 360 F.3d at 1045.
The U.S. Constitution prohibits states from passing any ex post facto laws. U.S. CONST. art. I, § 10, cl. 1. The U.S. Supreme Court defined an ex post facto law to be one that "retroactively . . . increase[s] the punishment for criminal acts," Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). However, the application of a sentence enhancing law based on prior convictions is not "invalidly retroactive" simply because one of the prior convictions took place before the enactment of the law. See Gryger v. Burke, 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948). In Gryger, the Court explained that an enhanced sentence based on a prior conviction should not be "viewed as . . . an additional penalty for the earlier crimes." Id. Instead, it should be viewed as a "stiffened penalty for the latest crime, which is considered to be an aggravated offense because [it is] a repetitive one." Id. More recently, the Ninth Circuit also held that "application of a sentencing enhancement law due to a prior conviction does not violate the Ex Post Facto Clause" as long as they are not retroactively applied to triggering offenses. Brown v. Mayle, 283 F.3d 1019 at 1040 (9th Cir.2002), vacated on other grounds, Mayle v. Brown, 538 U.S. 901, 123 S.Ct. 1509, 155 L.Ed.2d 220 (2003); United States v. Sorenson, 914 F.2d 173, 174 (9th Cir.1990).
Here, California's Three Strikes law enhances sentences of criminals who are convicted of a crime after its enactment. CAL. PENAL. CODE. §§ 667.5(b), 668, 1192(a). The Three Strikes law enhances the sentences of such criminals based on their prior convictions. CAL. PENAL. CODE. §§ 667.5(b), 668, 1192(a). As noted above, Supreme Court authority permits a law like California's to enhance the sentence of a criminal whose prior convictions occurred before its enactment. See Gryger, 334 U.S. at 732, 68 S.Ct. 1256. Specifically, the Ninth Circuit held that application of California's Three Strikes law against a criminal whose prior conviction occurred before the law's enactment was constitutional. Brown, 283 F.3d at 1040 (9th Cir. 2002), vacated on other grounds, Mayle v. Brown, 538 U.S. 901, 123 S.Ct. 1509, 155 L.Ed.2d 220 (2003). Petitioner's sentence was enhanced by the Three Strikes law. (Lodgment 1 at 440.) The Supreme Court would explain Petitioner's sentence enhancement as a "stiffened penalty" for his latest crime because it is an aggravated offense due to its repetitive nature[10] rather *1041 than increased punishment for his earlier conviction. See Gryger, 334 U.S. at 732, 68 S.Ct. 1256. Therefore, the Three Strikes law is not an ex post facto law as applied in Petitioner's case.

VI. VAGUENESS
Petitioner further contends that California's Three Strikes law is void for vagueness. Petitioner claims the law does not "specifically list `ROBBERY PEN. C 211' and `HS 11350(a)' as a prior conviction of a felony," and therefore the qualifying priors are not clearly defined. (Doc. No. 21 at 27; Trav. at 24-31.) Petitioner presented this claim only to the California Supreme Court. The California Supreme Court reviewed this claim and rejected it without comment. (Lodgment 12 at 4B, 13-14; Lodgment 15.) The Court independently reviews this claim and finds it meritless. Himes, 336 F.3d at 853; Delgado, 223 F.3d at 981-82.
The Constitution is designed to "maximize individual freedoms within a frame work of ordered liberty." Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). A statute that limits such freedoms must be "examined for substantive authority and content as well as for definiteness and certainty of expression." Id. Thus, the "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Id. For vagueness challenges to statutes which do not involve First Amendment freedoms, a court should examine the statute "in the light of the facts of the case at hand." United States v. Powell, 423 U.S. 87, 92, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975).
A statute is sufficiently definite only if the legislature "establishes minimal guidelines to govern [its] enforcement." Smith v. Goguen, 415 U.S. 566, 574, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). Accordingly, in Kolender, the Court held that a California statute "requiring persons who loiter or wander on the streets to provide a `credible and reliable' identification and to account for their presence when requested by a police officer" was unconstitutionally vague. 415 U.S. at 574, 94 S.Ct. 1242. Justice O'Connor explained, "[the statute] contains no standard for determining what a suspect has to do in order to satisfy the requirement to provide a `credible and reliable' identification. As such, the statute vests virtually complete discretion in the hands of the police to determine whether he has satisfied the statute." Id. The Supreme Court's main concern was that this lack of clarity had the potential to lead to the arbitrary suppression of the freedoms of speech and movement because the law seemingly allowed a person to walk freely on a public street "only at the whim of any police officer." See id.
The Court must now examine whether California's Three Strikes law, as it is phrased, uses minimal guidelines in determining when sentences should be enhanced. Smith, 415 U.S. at 574, 94 S.Ct. 1242. For the purpose of sentence enhancement, the Three Strikes law defines a qualifying prior conviction as "any offense defined in subdivision (c) of Section 667.5 as a violent felony or any offense defined in subdivision (c) of Section 1192.7 as a serious felony." CAL. PENAL. CODE. § 667(d)(1). If a criminal's prior conviction is for a crime listed in subdivision (c) of either section 667.5 or 1192.7, then it may be used to enhance the sentence for his latest offense. The state court may not arbitrarily decide whether a prior is a serious or violent felony, it must impose sentence enhancements only if the prior is one of the listed offenses. CAL. PENAL. *1042 CODE. § 667.5(d)(1). Through reference, California's Three Strikes law sets minimal guidelines on which prior convictions may be used to enhance sentences.
As applied to Petitioner, California's Three Strikes law is not unconstitutionally vague. Under Section 1192.7, subdivision (c), robbery is listed as an serious felony offense. CAL PENAL. CODE. § 1192.7(c)(19). Under Section 667.5, subdivision (c), robbery is listed as a violent felony. CAL. PENAL. CODE § 667.5(c)(9). The trial court found that Petitioner had been convicted of robbery in 1988. (Lodgment 1 at 28-29.) Because robbery is listed as both a violent felony and a serious felony, the court imposed a sentence enhancement based on Petitioner's 1988 prior conviction. The court did not arbitrarily impose an enhanced sentence on Petitioner, but instead relied on clearly defined qualifying priors. As such, the state court's rejection of this claim was not inconsistent with the Supreme Court's void-for-vagueness doctrine.

VII. INSUFFICIENT EVIDENCE
Petitioner claims there was insufficient evidence presented at trial to show that he was one of the perpetrators during the Symbolic robbery. (Doc. No. 21. at 28-31; Trav. at 32-43.) The state courts rejected this claim without comment.[11] (Lodgment 15.) As there is no state court opinion to review, the Court independently reviews this claim and finds that it is without merit. Himes, 336 F.3d at 853 (holding that the court should "perform an `independent review of the record' to ascertain whether the state court's decision was objectively reasonable."); Delgado, 223 F.3d at 981-82.
Under Supreme Court authority, a habeas corpus petitioner has a valid claim for insufficient evidence only if "it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When reviewing the record, the federal court should view "the evidence in the light most favorable to the prosecution." Id. at 319, 99 S.Ct. 2781. Thus, a rational trier of fact can rely on "the testimony of one witness, if solidly believed," to find the defendant to be the perpetrator of the crime. United States v. Ginn, 87 F.3d 367, 369 (9th Cir.1996).
In Petitioner's case, two victims identified him as one of the perpetrators at photo lineups, live lineups, and at trial. (Lodgment 2 at 60-72, 138-41, 335-43.) Two telephone numbers linked to Petitioner had made thirty-two phone calls from and to the La Jolla area the morning of the Symbolic robbery. (Lodgment 2 at 282-94, 304.) Jones' fingerprints were found at Symbolic, (Lodgment 2 at 176, 184-85, 245-46), and Petitioner had rented the car that Jones was driving when he was arrested. (Lodgment 2 at 259, 265.) Not only was there one "solidly believed" witness who testified against Petitioner, there were additional witnesses and a plethora of other inculpating circumstantial evidence presented at trial. Ginn, 87 F.3d at 369. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact, could have easily found Petitioner to be one of the perpetrators of the Symbolic robbery.

*1043 VIII. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL
Petitioner claims that his trial counsel was ineffective. He contends that his trial counsel failed to spend time to: 1) interview Thess Good and William Diglio;[12] 2) investigate a meeting that Symbolic victims had following the robbery; 3) bring to the jury's attention the transcript of one of the victim's 911 calls; and 4) investigate what people at neighboring businesses witnessed prior to the robbery. (Doc. No. 21 at 33-35; Trav. at 44-56.) Had his trial counsel done the above, Petitioner maintains there would have been substantial third party culpability and misidentification evidence that could have changed the outcome of the proceedings. The state appellate court and the California Supreme Court did not address these claims. (Lodgment 12 at 24-26; Lodgment 15.) However, the Superior Court of California rejected these claims in a reasoned decision. (Lodgment 9 at 3-5.) The Superior Court of California explained that Petitioner did not show that his counsel's conduct was: 1) objectively unreasonable; and 2) prejudicial to Petitioner. (Lodgment 9 at 5.) The Court looks through to the Superior Court's opinion and finds that the state court's denial of Petitioner's ineffective counsel claim was not an unreasonable application of, or contrary to, federal law as determined by the U.S. Supreme Court. Robinson, 360 F.3d at 1045.
Under federal law, a petitioner is entitled to habeas corpus relief for ineffective assistance of counsel only if he can show that his "counsel's representation fell below an objective standard of reasonableness," and, as a result, he was prejudiced. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. 2052. If a petitioner is challenging his counsel's reasonableness in deciding not to investigate certain aspects of his case, then the court should assess the counsel's decision by "applying a heavy measure of deference to counsel's judgments." Id. at 691, 104 S.Ct. 2052. Thus, a petitioner's conclusory allegations of ineffective assistance of counsel that are unsupported by the record are insufficient to warrant relief on federal habeas corpus. James v. Borg, 24 F.3d 20, 26 (9th Cir.1994). Furthermore, the failure to make a futile motion is not ineffective assistance, and the failure to investigate inadmissible evidence is not considered deficient representation. See id. at 27. A petitioner is prejudiced if his "counsel's errors were so serious as to deprive the defendant of a fair trial." Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052. In other words, but for the counsel's errors, the petitioner would have received a more favorable result. Id.
A. Failure to Investigate Potential Third-Party Culpability
Here, Petitioner claims that if his counsel had interviewed Thess Good, then he would have discovered more third-party culpability evidence. Petitioner insists that his counsel would have learned that the police offered Good benefits in exchange for information about Petitioner's whereabouts. (Doc. No. 21 at 33.) Armed with this information, Petitioner argues that his counsel could have put Good on the witness stand before the jury and presented Good's past criminal history, demonstrated Good's physical resemblance to Petitioner, and presumably, allowed them to conclude that Good had framed the Symbolic robbery on Petitioner. (Id.)
*1044 In order to determine whether defense counsel's failure to investigate Petitioner's allegations about Good amounted to ineffective counsel, the Court must measure the likelihood that evidence obtained from Good would have been admissible in California trial court. See James, 24 F.3d at 27. Under California law, "there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime" in order for that third-party culpability evidence to be admitted. People v. Avila, 38 Cal.4th 491, 578, 43 Cal.Rptr.3d 1, 133 P.3d 1076 (2006).
The record supports three allegations about Good: 1) he looks like Petitioner, 2) he knows Petitioner, and 3) he has a criminal history. (Lodgment 1 at 426-27.) But, nothing from the record shows that Good was linked to Symbolic. There is no evidence connecting Good to Jones and no witnesses identifying Good as one of the perpetrators. Alone, Good's physical features, relationship to Petitioner; and criminal history are insufficient to establish a link between him and Symbolic. Therefore, information and testimony provided by Good would have been inadmissible as third-party culprit evidence. Avila, 38 Cal.4th at 578, 43 Cal.Rptr.3d 1, 133 P.3d 1076. Furthermore, if the jury had been informed of Good's past criminal history and his association to Petitioner, it would have reflected poorly on Petitioner's moral character. The jury would have wondered why Petitioner kept in contact with an ex-felon, and may have developed suspicions about the type of conduct in which Petitioner engages. Thus, the defense counsel's decision to not investigate inadmissible, or otherwise inculpating, evidence was not unreasonable.
Petitioner also claims that his trial counsel should have investigated and interviewed William Diglio. (Doc. No. 21 at 33.) He claims that trial counsel would have discovered that Diglio's cell phone had Symbolic's phone number programmed into it. (Id.) Petitioner explained that since Diglio is a federal parole violator, the discovery of a link between him and Symbolic would have been favorable evidence for Petitioner. (Id.) The Court finds that this claim is without merit. The record has no information about William Diglio. The Court can not simply assume that Petitioner's unsupported allegations about William Diglio are true. As such, Petitioner's conclusory allegation that Diglio is a federal parole violator and is connected to Symbolic, is unsupported by the record and insufficient for an ineffective assistance of counsel claim. James, 24 F.3d at 26.
Regardless of the admissibility or truth of Petitioner's allegations about third party culprits, it is unlikely that the testimony or information provided by Good and Diglio would have led the jury to reach a more favorable outcome for Petitioner. At trial, three victims identified Petitioner, and there was circumstantial evidence that linked Petitioner to Jones, who was linked to Symbolic by fingerprints. (Lodgment 2 at 60-72, 335-43, 138-41, 176, 184-85, 245-46, 266-67.) Good and Diglio, on the other hand, were not linked to Jones in anyway, other than by self-serving statements made by Petitioner. (Lodgment 1 at 437.) Considering these facts, it does not appear that Good's and Diglio's testimonies would have exonerated Petitioner. The failure to investigate Good and Diglio, therefore, was not prejudicial to Petitioner.
For the foregoing reasons, Petitioner has not offered sufficient support to overcome the Court's strong presumption of reasonable professional assistance by Petitioner's trial counsel. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Further, Petitioner has not shown that the failure to investigate third party culpability evidence was *1045 prejudicial to him. As such, this Court finds that the state court's rejection of the claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.
B. Failure to Investigate Victims' Meeting
Petitioner claims that the victims met and shared their recollections of the robbery after it took place, and contends that trial counsel should have investigated this meeting. (Doc. No. 21 at 34.) Petitioner also argues that had trial counsel done so, he would have learned that the victims' recollections of the robbery at the meeting were inconsistent with their testimonies and statements to the police. (Id.) Petitioner maintains that his counsel could have then presented his findings to the jury as impeachment evidence against the victims that identified Petitioner. (Doc. No. 21 at 34.)
Despite his detailed accusations, Petitioner offers no evidence from the record that shows a meeting occurred. Further, he offers no support for his assertion that the victims' recollections of the robbery differed between their alleged meeting and at trial. Thus, Petitioner's allegation of a victims' meeting is unsupported by the record and cannot overcome the strong presumption that trial counsel's assistance was reasonable. James, 24 F.3d at 26.
Even if trial counsel had investigated the incident and found impeachment evidence, there is no reason to believe the information discovered and presented would have changed the jury's impression of the victims. At trial, there were already conflicting stories about the description of the perpetrators. Some victims could identify the perpetrators, some could not. (Lodgment 2 at 60-72, 138-141, 335-43.) Each victim's description of the taller perpetrator, who was identified by two victims as Petitioner, was slightly different. Some victims described the Petitioner as being six feet, four inches tall, some as being six feet tall. Some victims thought Petitioner was skinny, some did not. (Id. at 107, 134, 156, 336.) Yet despite the differences in the victims' testimonies, the jury still found Petitioner guilty. It appears that the jury found the victims credible despite their already conflicting testimony. Petitioner has failed to demonstrate that additional conflicting recollections would have made a difference. As such, the lack of an investigation into the meeting did not prejudice Petitioner.
For the above reasons, the Court holds that the state court's rejection of this claim was a reasonable application of Supreme Court precedent.
C. Failure to bring 911 Call to Jury's Attention
Petitioner maintains that trial counsel should have presented evidence of an emergency call made by a victim that contained descriptions of the perpetrators which were inconsistent with the descriptions that same victim later gave at trial. (Doc. No. 21 at 34.) For similar reasons to those discussed above, the Court finds that this claim has no merit. Petitioner does not supported his allegation with evidence; the Court is offered solely a naked claim. Moreover, Petitioner offers no support suggesting, that had the purported call been presented to the jury, he would have received a more favorable outcome.
D. Failure to Investigate What Neighboring Business Witnessed
Petitioner alleges trial counsel should have presented evidence that a neighboring' business had noticed Symbolic was under surveillance by people in a vehicle prior to the robbery. (Doc. No. 21 at 34.) He claims that further investigations would have led to third party culpability *1046 evidence. However, Petitioner is again short on evidence and specifics. Petitioner does not explain how the investigation would have led to exculpatory evidence. He offers no rationale on how the evidence would have changed the outcome of the proceedings. Petitioner offers no support for the contention that counsel acted unreasonably. Furthermore, Petitioner has not shown how his counsel's actions prejudiced him. Unsupported contentions are not sufficient to overcome the Court's strong presumption that counsel acted reasonably. James, 24 F.3d at 26. As such, the state court's denial of this claim was a reasonable application of Supreme Court law.

IX. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL
Petitioner claims that his appellate counsel was ineffective because he failed to bring certain claims raised in this Petition before the state court on direct appeal. (Doc. No. 21 at 37; Trav. at 57-61.) Petitioner complains that his appellate counsel raised only his confrontation claim and sentencing issues with, the California Court of Appeals when his other unraised claims[13] were clearly meritorious. (Id.) This issue was presented only to the California Supreme Court. The state high court denied Petitioner without comment. (Lodgment 12; Lodgment 15.) Therefore, the Court independently reviews this contention. Himes, 336 F.3d at 853; Delgado, 223 F.3d at 981-82.
When a petitioner asserts that he received ineffective appellate counsel because his attorney failed to raise particular claims, the court should apply the Strickland standard. The two prongs of the Strickland standard consist of determining whether the failure to raise claims was reasonable conduct, and whether that failure prejudiced the petitioner. Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather, may select from among them in order to maximize the likelihood of success on appeal." Id. In determining the reasonableness of appellate counsel, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith, 528 U.S. at 288, 120 S.Ct. 746, quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986).
Here, Petitioner complains his appellate counsel did not raise the following issues on direct appeal: 1) trial court erred in denying Petitioner's motion for new trial and that error violated Petitioner's due process rights; 2) California's Three Strikes law, as applied to Petitioner's sentence, violates the Ex Post Facto Clause of the Constitution; 3) California's Three Strikes law is void for vagueness; 4) Petitioner was convicted with insufficient evidence. (Lodgment 3.) On the other hand, Petitioner's appellate counsel did raise a confrontation claim, as discussed in Section IV(A)(1) of this Report and Recommendation. His appellate counsel also raised sentencing issues. (Doc. No. 21 at 37; Trav. at 57-61.) The state appellate court rejected Petitioner's confrontation claim, but found that the sentencing issues raised by appellate counsel had merit and reduced Petitioner's sentence to 52 years and 8 months. (Lodgment 5.) Since the state appellate court ruled for Petitioner, the four unraised claims were not "clearly stronger" than the sentencing issue. Smith, 528 U.S. at 288, 120 S.Ct. 746.
*1047 As to Petitioner's confrontation claim versus the four claims not raised on appeal, the Court has spent the preceding thirty pages discussing their merits. To summarize and avoid repetition, it will suffice to say all claims concerned here are weak or spurious. The confrontation issue is the best of the lot, but still deficient, unsupported by authority. Comparing the abominable against the merely bad, the four unraised claims are not "clearly stronger" than the confrontation claim. Smith, 528 U.S. at 288, 120 S.Ct. 746. Further, even had the unraised claims been argued by appellate counsel, success was implausible. See discussions supra Sections IV-VIII. Petitioner, then, was not prejudiced. Accordingly, Petitioner has not overcome the presumption of effective assistance of counsel. Id.
For reasons discussed above, the Court finds that the state court's rejection of Petitioner's ineffective appellate counsel claim was a reasonable application of Supreme Court precedent.

X. DEPRIVATION OF JURY TRIAL IN SENTENCING
Petitioner contends that his rights to due process and a trial by jury were violated when the trial court judge imposed upper terms for his sentence based on facts that were neither found by the jury nor admitted by Petitioner. (Doc. No. 21 at 71; Trav. at 62-104.) Petitioner presented this claim only to the California Supreme Court. The state high court rejected the claim without comment. This court independently reviews the merits of this claim. Himes, 336 F.3d at 853; Delgado, 223 F.3d at 981-82.
A. California Determinate Sentencing Law
California's Determinate Sentencing Law requires a sentencing judge to select the middle term for a conviction unless she finds aggravating factors by a preponderance of the evidence, which allow imposition of the upper term. C. PENAL. CODE. § 1170(b). Some of the aggravating factors include a determination of whether the crime was committed violently, whether the crime involved great bodily harm or threat of great bodily harm, whether the crime was carried out in a sophisticated fashion, whether the victims were particularly vulnerable, and whether the criminal had prior offenses. CAL. R. CT. 4.421(a)(1), 4.421(a)(8), 4.421(b)(2). Since this sentencing scheme allows the judge (instead of a jury) to find factors in determining punishment and sets the standard of finding these factors to be a preponderance of the evidence, it is subject to scrutiny under the Supreme Court's interpretation of the Fifth and Sixth Amendment.
B. Constitutionality of Judge Determinations of Penalty Enhancing Findings
In Apprendi v. New Jersey, the Supreme Court held, other than a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The Supreme Court clarified its position in Blakely v. Washington, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), stating, the "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." A defendant forfeits his right, to contest an Apprendi error on appeal if he fails to object to that error at trial unless the unraised error seriously affected the "fairness, integrity, and public reputations of the judicial proceedings." U.S. v. Cotton, 535 U.S. 625, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). Thus, if a defendant fails to object to an Apprendi sentencing error at trial and later claims *1048 such an error for habeas corpus relief, a reviewing court should determine whether the factors relied upon to enhance the defendant's sentence were "uncontroverted at trial and supported by overwhelming evidence." See Cotton, 535 U.S. at 633, 122 S.Ct. 1781. If the record reflects that the factors were overwhelmingly supported by evidence, then the defendant is barred from raising the claim.
When determining sentences within a prescribed statutory range, a judge is permitted to consider factors based on facts found by the jury during trial. Apprendi, 530 U.S. at 481, 120 S.Ct. 2348. Indeed, "both before and since the American colonies became a nation, courts in this country ". . . practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and the extent of punishment to be imposed within limits fixed by law." Williams v. New York, 337 U.S. 241, 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). In U.S. v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the high court held that the Federal Sentencing Reform Act ("SRA") was unconstitutional because it bound district judges to mandatorily impose a higher penalty for a convicted defendant upon finding any statutorily proscribed aggravating factors by a preponderance of the evidence. 543 U.S. at 258, 125 S.Ct. 738.
Nevertheless, instead of invalidating the entire statute, the Supreme Court severed the mandatory provisions of the SRA. Id. at 259, 125 S.Ct. 738. The end result was that a district judge may impose a higher sentence within the maximum penalty prescribed by law upon finding an aggravating factor, but need not do so. Id. at 264, 125 S.Ct. 738. The Supreme Court found that the SRA was constitutional if it served as an advisory sentencing guideline for judges. Id. at 233, 125 S.Ct. 738. Indeed, a constitutional question on the SRA would have been "avoided entirely if Congress had omitted . . . the provisions that make the Guidelines binding on judges." Id. Justice Stevens explained, "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Id.
The high court's rationale for its severing efforts was to preserve the goal of Congress to "move the sentencing system in the direction of increased uniformity" between the real conduct of offenders and their sentences. Id. at 253, 125 S.Ct. 738. To illustrate, the Court used the following hypothetical:
"Now imagine two former felons, Johnson and Jackson, each of whom engages in identical criminal behavior: threatening a bank teller with a gun, securing $50,000, and injuring an innocent bystander while fleeing the bank. Suppose prosecutors charge Johnson with one crime (say, illegal gun possession, see 18 U.S.C. § 922(g)), and Jackson with another (say, bank robbery, see § 2113(a))."
Booker, 543 U.S. at 253, 125 S.Ct. 738.
Under the SRA, a judge would have been required to sentence both Johnson and Jackson similarly for their identical conduct because, presumably, he would find identical aggravating factors in the commission of their crimes. Id. By making the SRA an advisory sentencing guideline, the high court ensured that judges retained the discretion to sentence Johnson and Jackson similarly. Id. The Supreme Court was concerned that if the SRA was completely invalidated or altered such that aggravating factors must be submitted to juries, then two criminals who engage in similar conduct, but are charged with different crimes, would be sentenced differently. Id. Such results would undermine *1049 the Congressional intent of moving punishment and real conduct "in the direction of increased uniformity." Id.
The Supreme Court's analysis of the hypothetical makes clear that judges are permitted to exercise discretion on sentencing, using factors based on evidence produced at trial. See Apprendi, 530 U.S. at 481, 120 S.Ct. 2348; see also, Booker, 543 U.S. at 253, 125 S.Ct. 738, Williams, 337 U.S. at 241, 69 S.Ct. 1079. The majority opinion went as far as to suggest that a sentencing judge is permitted to interpret evidence adduced at trial, find that the defendant engaged in certain conduct, and impose a sentence based on that conduct even if a jury's verdict does not reflect that conduct. See Booker, 543 U.S. at 253, 125 S.Ct. 738. For example, in the high court's hypothetical, Johnson might be convicted of illegal gun possession without the jury finding that Johnson committed bank robbery.[14] However, a sentencing judge would be permitted to examine the evidence, come to a conclusion that Johnson's conduct was dangerous and similar to a bank robbery, and sentence him to a term similar to that of a criminal convicted of bank robbery. Thus, while under Apprendi and Blakely a judge may only enhance a sentence based on jury found facts, Blakely, 542 U.S. at 303, 124 S.Ct. 2531, Booker suggests that aggravating factors based on these facts need not be found by the jury. 543 U.S. at 253, 125 S.Ct. 738.
The California Supreme Court, after considering Apprendi, Blakely, and Booker, held that "the judicial [fact-finding] that occurs when a judge exercises discretion to impose an upper term sentence or consecutive terms under California law does not implicate a defendant's Sixth Amendment right to jury trial." People v. Black, 35 Cal.4th 1238, 1244, 29 Cal.Rptr.3d 740, 113 P.3d 534 (2005). The state high court reasoned that Blakely and Apprendi did not hold that all sentencing schemes that involve judicial fact-finding were unconstitutional. Id. at 1253, 29 Cal.Rptr.3d 740, 113 P.3d 534. Relying on Booker, the state high court concluded that judges are permitted "to engage in the type of judicial factfinding typically and traditionally involved in the exercise of judicial discretion employed in selecting a sentence from within the range prescribed for an offense." Id. The California Supreme Court explained that the high court's goal in Blakely and Apprendi was to overrule sentencing schemes that "assign judges the type of factfinding role traditionally exercised by juries in determining the existence or non-existence of elements of an offense." Id.
The state high court concluded that similar to the SRA as revised by Booker, California's determinate sentencing scheme "afforded judges the discretion to decide, with the guidance of rules and statutes, whether the facts of the case and the history of the defendant justify a higher sentence. Such a system does not diminish the power of the jury . . ." to find elements of offenses. Id. Thus, the. California Supreme Court held that California's sentencing system is consistent with Booker and is not contrary to Apprendi or Blakely. Id. But the U.S. Supreme Court overruled Black in Cunningham v. California, ___ U.S. ___, ___, 127 S.Ct. 856, 868, 166 L.Ed.2d 856 (Jan. 22, 2007), holding California's determinate sentencing scheme unconstitutional because it lacked the jury trial and reasonable doubt elements of due process[15]. Three Supreme *1050 Court Justices[16] agreed with the state high court, and dissented in Cunningham. They stated, "[t]he California sentencing law that the court strikes down . . . is indistinguishable in any constitutionally significant respect from the advisory Guideline scheme that the [Supreme] Court approved in [Booker]." 127 S.Ct. at 873.
C. Retroactivity
Despite the overturning, the Supreme Court's holding in Cunningham does not apply retroactively on federal collateral review to upset a state conviction or sentence. See Schardt v. Payne, 414 F.3d 1025, 1027 (9th Cir.2005); see also Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Under Teague, a new procedural rule of constitutional law cannot be retroactively applied on federal collateral review to upset a state conviction. 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334. There are two exceptions to this rule. First, the new rule may be applied retroactively if it forbids "punishment of certain primary conduct" or if it prohibits "a certain category of punishment for a class of defendants because of their status or offense." Beard v. Banks, 542 U.S. 406, 416-17, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004). Second, the new rule may be applied if it is a "watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Id.
After Beard, the Ninth Circuit held that the rule in Blakely does not retroactively apply to convictions that became final prior to its final publication in June 24, 2004. Schardt, 414 F.3d at 1027. The Ninth Circuit's reasoning was that Blakely presented a new procedural rule because it merely allocated some of the decision-making authority previously held by judges to juries. Id. at 1036. Furthermore, the Ninth Circuit reasoned that the rule in Blakely did not fall within either exceptions discussed in Beard. Id. Similar to Blakely, Cunningham shifted the decision-making authority previously held by judges to juries, making it a procedural rule rather than a substantive rule. Cunningham merely suggested that aggravating factors in the California Determinate Sentencing Scheme used to impose an upper term must be found by a jury instead of a judge. See Cunningham, ___ U.S. ___, ___, 127 S.Ct. 856, 868, 166 L.Ed.2d 856; see also Apprendi, 530 U.S. at 490, 120 S.Ct. 2348, Blakely, 542 U.S. at 303, 124 S.Ct. 2531. Thus, like Blakely, Cunningham should not be retroactively applied to convictions that were final prior to its publication.[17]
D. Analysis
Here, Petitioner's conviction became final on March 18, 2006, ninety days after the California Supreme Court denied Petitioner's petition. See Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999). Petitioner was sentenced to several upper terms as a *1051 result of the conviction after the sentencing judge found several aggravating factors beyond a preponderance of the evidence. (Doc. No. 21 at 75.) Cunningham was decided on January 22, 2007. Thus, for reasons discussed above, it may not be applied to Petitioner's case. Teague, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334.
On the other hand, Blakely, as noted before, was decided on June 24, 2004, and Booker was decided on February 22, 2005. Accordingly, the rules established in Apprendi and its progenies prior to Cunningham do apply to Petitioner's case, and the Court must determine if Petitioner is barred from raising his Apprendi claim because he failed to raise the claim in trial court. Cotton, 535 U.S. at 633, 122 S.Ct. 1781.
As previously discussed, when a defendant fails to raise an Apprendi claim at the trial court level, he is barred from raising the issue on collateral review if factors used in enhancing his sentence were "uncontroverted at trial and supported by overwhelming evidence." See Cotton 535 U.S. at 633, 122 S.Ct. 1781. Petitioner did not raise his Apprendi error claim for direct appeal from trial court. (See Lodgement 3 at i-iii.) Therefore, the Court should determine whether the factors used to enhance his sentence were uncontroverted and supported by overwhelming evidence. See id.
In sentencing Petitioner, the trial judge found that: 1) the crime involved great violence; 2) there was threat of great bodily harm; and 3) the manner in which the crime was carried out indicated planning, sophistication, and professionalism. (Doc. No. 21 at 71.) The evidence showed that two black males used guns to rob Symbolic. (Lodgement 11 at 1.) The robbers forced Symbolic's employees to move to the back of Symbolic's showroom and threatened to shoot them if they did not comply. (Lodgement 2 at 106-111.) These facts show that the robbers were engaging in violent conduct. Moreover, they show that robbers threatened to inflict great bodily harm on the victims. Victims testified that the robbers used cell phones to communicate and to discuss plans during the robbery. (Lodgement 2 at 325-28; 43-5.) This fact shows that the robbers used fairly sophisticated communications equipment to plan out their robbery. And, of course, the jury found that Petitioner committed the Symbolic robbery. (Lodgment 1 at 105-112) In light of the record, threat of great bodily harm and a high degree of sophistication in committing the crime were overwhelmingly supported by the facts of the case. Enhancing Petitioner's sentence based on these factors did not seriously affect the "fairness, integrity, and public reputations of the judicial proceedings." Cotton, 535 U.S. at 631, 122 S.Ct. 1781. Petitioner's claim is therefore barred. Cotton, 535 U.S. at 631, 122 S.Ct. 1781.

XI. VALIDITY OF PRIORS
Petitioner claims that he was denied due process when he was deprived of an opportunity to attack the prior conviction that was used to enhance his sentence. He contends that he was not provided appellate counsel to appeal his prior conviction. Also, on April 15, 2005, Petitioner filed a motion requesting trial transcripts for his 1988 conviction, and it was denied by the state court. (Doc. No. 21 at 87-88.) Petitioner maintains that because he was denied counsel as well as the opportunity to review his trial transcripts, he was deprived of his chance to attack the constitutionality of his prior conviction. The state courts did not address this issue. This Court independently reviews the factual record and finds the claim without merit. See Himes, 336 F.3d at 853.
In Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 121 S.Ct. 1567, 149 *1052 L.Ed.2d 608 (2001), the Supreme Court held that, generally, a petitioner for a writ of habeas corpus has no right to collaterally attack the validity of a prior conviction used to enhance his sentence. Id. at 396, 121 S.Ct. 1567. The Court's rationale behind the general Lackawanna rule is to prevent defendants from attacking the validity of their prior convictions after they failed to "pursue those remedies while they were available" during the court proceedings for these prior charges. Id.
From Petitioner's allegations, the Court's best inference is that Petitioner did not pursue an appeal after he was convicted of the prior. He did not request court transcripts soon after his 1988 conviction. Instead, he waited 18 years after he found out that the prior was going to be used to enhance his sentence before filing a motion to request the transcripts. (Tray. at 106.) Petitioner is collaterally attacking the validity of his prior only after he had learned that it would be used to enhance the sentence of his most recent conviction. Petitioner's conduct is a textbook example of one attempting to untimely challenge the validity of his prior after he failed to do so at the appropriate juncture.
There is an exception to the Lackawanna rule: a petitioner may challenge his prior conviction if he was not appointed trial counsel. Lackawanna, 532 U.S. at 404, 121 S.Ct. 1567. However, Petitioner complains of a lack of appellate counsel not trial counsel, and the exception does not apply. Accordingly, Petitioner is procedurally barred from attacking the validity of his prior conviction in this Court. See id. at 406, 121 S.Ct. 1567.

XII. PROSECUTOR'S ERRORS
Petitioner makes several claims, alleging that the prosecution did not timely disclose various facts, police reports, and portions of police reports at trial. He contends: 1) the prosecution did not timely disclose page one and page two of the police report for Edward Jones' arrest, (doc. no. 21 at 92-97; Tray. at 109-112); 2) the prosecution failed to timely disclose the police report of Thess Good's arrest and detention, (Doc. No. 21 at 97-99); 3) the prosecution failed to disclose the criminal history of one of the victims of the Symbolic robbery, (doc. no. 21 at 99-100); and 4) the prosecution misidentified Petitioner's pager number and presented it as Petitioner's cell phone number to the jury. Petitioner claims that the number was not Petitioner's cell phone number, but instead, his pager number. (Doc. No. 21 at 101-103.)
Petitioner asserts that the prosecutor's errors amounted to a due process violation because the untimely disclosed and misidentified evidence was exculpatory. Had the proper disclosures been made, they could have been more thoroughly investigated during discovery. Further, Petitioner maintains that he was prejudiced at trial as a result of these errors. (Lodgment 5 at 14-18; Lodgment 15) To evaluate this claim, the Court will use the standard of review for disclosures by the prosecution discussed in section IV(A)(2) of this Report and Recommendation. In short, for relief to be granted, Petitioner must show that the information that the prosecutor either failed to disclose or untimely disclosed was exculpatory evidence and such prosecutorial misconduct prejudiced Petitioner from receiving a more favorable verdict. Brady, 373 U.S. at 87, 83 S.Ct. 1194.
A. Failure to Disclose Portions of Police Report for Edward Jones' Arrest
Petitioner contends that the prosecutor fallen to timely disclose page one and page two of the police report describing Edward Jones' arrest. However, page one and page two of that police report were disclosed to the defense on November 6, 1999, two days before trial ended. *1053 (Doc. No. 21 at 100.) Page one and page two of that police report has Petitioner's statement describing his version of what happened on the day Jones was arrested. (Lodgment 1 at 404.) It also has a statement made by Enterprise-Rent-A-Car employee Jennifer Poulin, who recalled that Petitioner called Enterprise at around 9:30 a.m. to report the rental car missing. (Lodgment 1 at 403.)
As discussed earlier, the state appellate court found that Petitioner's counsel acknowledged that the evidence in page one and page two of the police report is hearsay. (Lodgment 5 at 14-16.) Thus, even if the pages were disclosed earlier, they could not have been admitted as evidence. See CAL. EVID.CODE § 1200. Further, because Petitioner knew that he made a statement to the police, he could have simply chosen to take the stand and testify as to what happened on the day of Jones' arrest. Lastly, Petitioner's statement is hardly credible and not exculpatory because he "only called police to report the vehicle stolen after Jones was arrested while driving in it." (Lodgement 5 at 15.) Accordingly, the Court finds that the state appellate court's ruling was not contrary to, or an unreasonable application of, federal law. Robinson, 360 F.3d at 1045.
The Court independently reviews Petitioner's claim regarding Jennifer Poulin's statement because the state courts did not address the claim in their decisions. See Himes, 336 F.3d at 853; Delgado, 223 F.3d at 981-82. Jennifer Poulin's statement does not exculpate Petitioner. As discussed earlier, Petitioner's story was already inconsistent with the Fam-Mart employee's recollection of events. Poulin's statement also contradicted Petitioner's representations and would have further clouded. Petitioner's story. According to the police report, Fam-Mart did not open until 10:00 a.m. on the day of Jones' arrest. (Lodgment 1 at 405.) According to Petitioner, he did not discover that his car was stolen until after he entered Fam-Mart, which had to be sometime after 10:00 a.m., according to the Fam-Mart employee. (Id.) Yet, Petitioner called Poulin at around 9:30 a.m. to report that the car was' stolen. (Id.) Such inconsistencies would not have been favorable to Petitioner. Instead they would have made the jury further question Petitioner's credibility. Thus, Poulin's statement, would not have exculpated Petitioner. Since Poulin's recollection would not have been exculpatory, the failure to timely disclose her statement did not harm Petitioner's defense and is not prejudicial.
B. Failure to Disclose Police Report of Thess Good's Arrest and Detention
Petitioner alleges that prosecution did not disclose the police report of Thess Good's arrest and detention until November 6, 1999, two days before the trial ended. He claims that this lateness in disclosure was prejudicial to him. (Doc. No. 21 at 97-99.) Petitioner asserts that the police report mentioned that Good, who allegedly looks like Petitioner, was detained. Petitioner further claims that the report failed to mention that incriminating items were confiscated from Good's home, such as "hand guns, cell phones, etc." (Doc. No. 21 at 98.) Petitioner maintains that these items and the police's description of Good would have been exculpatory evidence had they been presented to the jury at trial. (Id.) The state courts did not issue a reasoned decision addressing this claim. Thus, the Court will independently review Petitioner's contentions. See Himes, 336 F.3d at 853.
As previously discussed,[18] in order for a petitioner to succeed on a claim of suppression *1054 of evidence by the prosecution, he must show that the evidence withheld by the prosecution was favorable to him. Brady, 373 U.S. at 87, 83 S.Ct. 1194. Additionally, he must show that prosecution's suppression of the evidence prejudiced him. Id. Conclusory allegations unsupported by specific statements of facts are insufficient to warrant habeas corpus relief. Boehme, 423 F.2d at 1058. Thus, a petitioner's unsupported allegations of suppression of evidence that was favorable to him and resultantly prejudiced him is insufficient to warrant habeas corpus relief. See id.
With regard to Good's physical similarities and relationship to Petitioner, the Court has discussed earlier that information about Good would not have been admissible as third-party culprit evidence.[19] Thus, even if the report were disclosed to Petitioner earlier, it would not have led to a more favorable outcome because the information in the report would not have been presentable to the jury at trial. Furthermore, regardless of the likely admissibility of the information in question, the report was indeed disclosed to Petitioner before the end of trial, and Petitioner had time to look at the report and use its information to develop a defense. (Doe. No. 21 at 97-99.) Thus, the untimely disclosure of the Thess Good report did not prejudice Petitioner.
With regard to Good's items, Petitioner simply has not offered any support for the contention that "guns, cell phones, etc." were confiscated from Good's home. (Doc. No. 21 at 98.) In fact, Petitioner even notes that the Thess Good police report failed to state that any items were confiscated (Id.) (emphasis added). As habeas corpus relief can not be granted based on Petitioner's unsupported allegations, Boehme, 423 F.2d at 1058, it should be denied as to this claim.
C. Failure to Disclose Criminal History of Victim
Petitioner claims that the criminal history of a Symbolic robbery victim was not disclosed by the prosecution. He claims that the failure to disclose the criminal history prevented his counsel from presenting impeachment evidence against this victim, who identified Petitioner as one of the perpetrators of the Symbolic robbery at trial, but failed to do so at lineups. (Doc. No. 21 at 99.) The state courts did not address this claim in a reasoned decision. After independent review, the Court finds that this claim is without merit. See Himes, 336 F.3d at 853.
Under California law, a witness may be impeached with a criminal record only where the offense is one of "moral turpitude." People v. Wheeler, 4 Cal.4th 284, 296, 14 Cal.Rptr.2d 418, 841 P.2d 938 (Cal.1992). Here, Petitioner has not specified the crimes with which the victim has been convicted. Rather, Petitioner appears to be unsure of whether or not the victim even has a criminal history. He states, "information regarding a potential criminal history of [victim]" was realized at trial. (Doc. No. 21 at 102 (emphasis added).) Conclusory allegations that border on speculation are all that Petitioner has offered to the Court. As unsupported contentions are not enough to warrant habeas corpus relief, Boehme, 423 F.2d at 1058, Petitioner's claim should be denied.
D. Allegation of Misidentifying a Pager Number
Petitioner alleges Detective Keene falsely reported his pager number XXX-XXX-XXXX *1055 as a cell phone number and testified accordingly at trial. (Doc. No. 21 at 101.) Petitioner claims that he only has a pager number. (Id.) Therefore, had Keene's information been corrected at trial, it would have been exculpatory for Petitioner because witnesses testified that the Symbolic robbers used cell phones, not pagers. (Id. at 102.) Respondents admit that the phone number was indeed a pager number. (Doc. No. 28 at 28.) However, Respondents note that cell phones subscribed under the names Tim Walker and Crini Ornelas[20] called Petitioner's pager several times. (Doc. No. 28 at 28; Doc. No. 21 at 147.) The state courts did not address this claim; thus, the Court will independently review its merits. See Himes, 336 F.3d at 853.
To prevail on a claim that prosecutorial misconduct allowed the introduction of false evidence or testimony into a trial, a petitioner must show: 1) "the testimony (or evidence) was actually false," and 2) "the prosecution knew or should have known that the evidence or testimony was actually false." United States v. Zuno-Arce, 339 F.3d 886, 889 (9th Cir. 2003). Petitioner must establish a factual basis for attributing to the government knowledge of false evidence of perjury. See Morales v. Woodford, 388 F.3d 1159, 1179 (9th Cir.2004) Additionally, a petitioner must show that the false evidence, whether deliberately or inadvertently disclosed by the prosecution, prejudiced the Petitioner such that there is any reasonable likelihood that the false evidence could "have affected the judgement of the jury. . . ." Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); Zuno-Arce, 339 F.3d at 889.
Here, Respondents admit that Detective Keene falsely identified the number XXX-XXX-XXXX as Petitioner's cell phone number. However, Petitioner fails to support his contention that the prosecution knew or should have known that Keene testified erroneously during trial. As Petitioner failed to provide factual basis for attributing to the government knowledge of false evidence, he has not proven one of the elements of a prosecutorial misconduct claim. See Morales, 388 F.3d at 1179.
Furthermore, Petitioner has not shown that the false information was prejudicial. See Giglio, 405 U.S. at 154, 92 S.Ct. 763. Petitioner does not dispute that the pager number was his, and the evidence shows that the cell phones subscribed to persons under the names of Tim Walker and Crini Ornelas called the pager several times. (Doc. No. 21 at 147.) The prosecution theorized that these cell phones were fraudulently obtained by Petitioner and another accomplice through the use of aliases. (See Lodgement 2 at 282-94.) Petitioner and the accomplice communicated through these cell phones to plan the robbery several days before and during its commission. (Lodgement 2 at 282-94.) While the prosecution and Detective Keene erroneously represented that the fraudulent cell phones were used to contact Petitioner's cell phone instead of his pager, this misrepresentation was not prejudicial to Petitioner. Whether the fraudulently obtained cell phones called Petitioner's pager number or cell phone number is immaterial because either way, one of the users of the cell phones attempted to communicate with Petitioner, as the prosecution theorized. (See Lodgment 2 at 282-94.) Petitioner has not shown how Keene's mistaken testimony or police report, *1056 if corrected, would have thwarted the prosecutor's theory. Even if Keene had testified that the number XXX-XXX-XXXX was Petitioner's pager number, the prosecutors still would have established a link between Petitioner's number and the cell phones subscribed to persons under Tim Walker's and Crini Ornelas' names. As such, Petitioner has not shown that Keene's false testimony prejudiced him. Thus, Petitioner should not be entitled to habeas corpus relief as to the prosecutorial misconduct claim.

XIII. LACK. OF DUE PROCESS AT TRIAL
Petitioner claims that the trial court erred when it excluded the first two pages of the police report for Edward Jones' arrest. (Doc. No. 21 at 106; Tray. at 112-13.) As discussed earlier, those pages contained. Petitioner's statement as to what happened prior to, and shortly after, Jones' arrest. The trial court excluded the two pages from evidence as inadmissible hearsay. (Id.) Petitioner claims that exclusion of such information was a due process violation. (Id.) The state courts did not address this claim in a reasoned decision.[21] After independent review of this claim, this Court finds that it is without merit. See Himes, 336 F.3d at 853.
Under Supreme Court authority, "erroneous exclusions of critical, corroborative defense evidence may violate the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to present a defense." DePetris v. Kuykendall, 239 F.3d 1057, 1062 (9th Cir.2001) (citing Chambers v. Mississippi, 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). However, a defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. Taylor v. Illinois, 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Indeed, states have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. U.S. v. Scheffer, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). A defendant must comply with these rules of evidence "designed to assure fairness and reliability." Chambers, 410 U.S. at 302, 93 S.Ct. 1038. Under Supreme Court authority, an exclusion of evidence on hearsay grounds amounts to a due process violation if the hearsay statement is material to the trial and the statement "bears persuasive assurances of trustworthiness." Chambers, 410 U.S. at 302, 93 S.Ct. 1038 (1973).
An example of a material statement that bears persuasive assurances of trustworthiness is illustrated in Chambers. In that case, the defendant was accused of murdering a police officer at a riot. Id. at 285, 93 S.Ct. 1038. The police officer was shot and a subsequent autopsy revealed that he had been hit with four .22-caliber bullets. A third party, Gabe McDonald, was also at the riot the evening of the police officer's death. Id. at 287, 93 S.Ct. 1038. Shortly after the riot, McDonald gave a sworn statement to defendant's attorney, confessing that he had shot the police officer with a .22-caliber revolver he owned. Id. However, McDonald later retracted his confession. Id. Nevertheless, the defendant tried to develop the theory that McDonald shot the police officer. Id. at 289, 93 S.Ct. 1038. The defendant had multiple witnesses, who were good friends of McDonald, who testified that they saw McDonald shoot the police officer. Id. *1057 However, the defendant's efforts were partly thwarted. The state court did not allow the defendant to bring McDonald on the stand as an adverse witness, and the prosecution chose not to, have him testify. Id. at 291-92, 93 S.Ct. 1038. In addition, the state court excluded three of defendants witnesses, who planned to testify that McDonald had admitted to shooting the police officer. Id. at 293, 93 S.Ct. 1038. The three witnesses were all long time friends of McDonald. Id. at 292-93, 93 S.Ct. 1038. The court excluded these witnesses on hearsay grounds. Id. at 292, 93 S.Ct. 1038.
However, the Supreme Court held that the defendant was deprived of a constitutional right to either cross examine McDonald or bring in evidence of his confession. Id. The Supreme Court found that the three witnesses were trustworthy because "each of McDonald's confessions were made spontaneously to a close acquaintance shortly after the murder had occurred" and "each one was corroborated by some other evidence in the caseMcDonald's sworn confession, the testimony of an eyewitness to the shooting, and proof of his prior ownership of a .22-caliber revolver." Id. at 300, 93 S.Ct. 1038. Thus, the high court ruled that because the witnesses' hearsay statements were material to the case and they were trustworthy, the trial court committed a due process violation when it excluded their testimony from evidence. Id. at 302, 93 S.Ct. 1038.
As for the hearsay statement at issue in the instant case, Petitioner's version of what happened on the morning of Jones' arrest that was documented in the police report of Edward Jones' arrest is substantially different from the hearsay statements in Chambers. In Chambers, witnesses saw McDonald shoot the police officer. McDonald confessed to the shooting. McDonald had a gun of the same caliber as the bullets found in the police officer's body. Lastly, the people who were to offer the hearsay statements were close friends of McDonald. The totality of the evidence that corroborated the hearsay statements in the case made them trustworthy. Chambers, 410 U.S. at 302, 93 S.Ct. 1038. Conversely, Petitioner has provided almost no corroborating evidence that comports with the version presented in the police report. Petitioner asserts that Edward Jones stole his car. The' only evidence that remotely corroborates Petitioner's assertion is that Edward Jones was arrested while driving Petitioner's rental car. (Lodgement 2, 264-65.) But there is no evidence supporting the contention that Jones stole the car from Petitioner.
In fact, there are even inconsistencies between Petitioner's statement and the ones made by other witnesses in the same report. Petitioner's statement is inconsistent with Jennifer Poulin's statement and the Fam-Mart employee's statement.[22] Furthermore, not only are there no assurances that Petitioner's hearsay statement is trustworthy, there is also no evidence that admission of the statement could have made the jury doubt Petitioner's already waning credibility and moral character at trial. Detective Johnny Keene found potentially incriminating telephone numbers, ammunition, and an identification card that appeared to be a fake in Petitioner's home. Keene's testimony regarding these items were submitted to the jury. (Lodgment 2 at 280-318.) In light of the evidence presented, Petitioner's credibility was already in question at trial. The presentation of his statement to the jury would have only further damned his chances at receiving a favorable impression. Thus, this Court finds that the trial court's exclusion of *1058 Petitioner's statement was a reasonable application of Supreme Court authority.

XIV. CONCLUSION
For all of the foregoing reasons, it is hereby recommended that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered DENYING Petitioner's writ of habeas corpus and dismissing this action.
IT IS ORDERED that no later than September 21, 2007, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."
IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties no later than September 28, 2007. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir.1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir.1991).
August 31, 2007.
NOTES
[1] Petitioner contends that the prosecutor failed to timely disclose portions of a police report which contained exculpatory information. The Report and Recommendation states that these portions of the police report "were disclosed to the defense on November 6, 1999, two days before the trial ended." R & R, page 32, lines 13-15 (citing Petition, p. 100). The Court notes that the November 6, 1999 date appears to be inaccurate because the trial ended on November 8, 2000, when the jury found Petitioner guilty. Lodgment 1, p. 105-112. However, this apparent inaccuracy does not undermine the finding in the Report and Recommendation that the disputed portions of the police report were disclosed before the trial ended.
[1] Scott Kernan, Warden, was originally named as one of the respondents. However, he was terminated on October 2, 2006.
[2] This Report and Recommendation is submitted to United States District Judge William Q. Hayes, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.
[3] The employee's two daughters were six and eight years old when the Symbolic robbery took place. (Lodgment 5 at 5.)
[4] Petitioner was convicted of Robbery, CAL. PENAL. CODE § 211, in 1988. (Lodgment 1 at 4-5.) The 1988 Robbery conviction is considered a serious felony prior and a strike prior under California's Three Strikes law. (Lodgment 1 at 5.) Petitioner was also convicted of another prison prior in 1986, but that prior was neither a serious felony or a strike prior under California's Three Strikes law. (Lodgment 1 at 5.)
[5] California's Determinate Sentencing Law is described in more detail in section IV(G)(1) of this Report and Recommendation.
[6] Page vi of Lodgement 2 is a list of witnesses who testified at trial. Page x has a list of Jones' witnesses who testified at his new trial motion hearing. Janice Thomas' name is not on page vi, but is on page x. She testified at the new trial motion hearing, but did not testify at trial.
[7] In Petitioner's statement, he claims that he and Jones drove to Fam-Mart the morning of the arrest. Petitioner maintains he left the car with Jones and went in the store to get a shirt. When he returned to the car, he discovered that Jones had driven off with it. Petitioner claims he called the police to report his car missing shortly after discovering that his car was missing. (Doc. No. 21 at 163.)
[8] In a search of Petitioner's house the police recovered ammunition, a key chain with the tan rental car information on it, a table cloth with a phone number written on it, and an apparently fake California Identification card with Petitioner's photograph, but the name "Walker" listed. This evidence links Petitioner to Jones and links Petitioner to the cell phone numbers called thirty-two times in the La Jolla area before, during, and after the robbery. (Lodgment 2 at 303-10.)
[9] Petitioner was convicted of his strike prior in 1988. (Lodgment 1 at 4-5.) California's Three Strikes law became effective on March 7, 1994. People v. Cargill, 38 Cal.App.4th 1551, 1554-55, 45 Cal.Rptr.2d 480 (Cal.Ct. App.1995).
[10] Petitioner was convicted of Robbery, CAL. PENAL. CODE § 211, in 1988 before being convicted of Robbery, CAL. PENAL. CODE § 211, again in the instant case. (Lodgment 1 at 4-5.)
[11] The Superior Court of California did provide a reasoned analysis regarding Petitioner's issue with the disclosure of the polite report of Edward Jones arrest, which was under the heading "DISCOVERY AND SUFFICIENCY OF EVIDENCE CLAIMS." (Lodgment 9 at 3.) However, the Superior Court did not address whether the evidence presented at trial was sufficient to convict Petitioner. No reasoned opinions regarding the insufficiency issue from the state appellate court was lodged with this Court. The Supreme Court of California rejected this claim without comment. (Lodgement 15.)
[12] Diglio's name appears for the first time in Petitioner's Petition for Writ of Habeas Corpus. No mention of Diglio appears in the records of this case.
[13] Petitioner is referring to, among other things, his due process, Ex Post Facto Clause, void-for vagueness, and insufficient evidence attacks on his conviction and sentence. None of these claims were raised by appellate counsel on direct appeal to the California Court of Appeals. (Lodgment 3.)
[14] Under the Supreme Court's hypothetical, the prosecutor does not charge Johnson with bank robbery.
[15] As discussed earlier, California's Determinate Sentencing Law requires that a sentencing judge find an aggravating factor by a preponderance of the evidence before she may impose an upper term sentence for a conviction.
[16] Justice Alito, Justice Breyer, and Justice Kennedy.
[17] While the retroactivity of Cunningham has not been addressed by the Ninth Circuit, several district courts, in their unpublished opinions, also found that Cunningham is nonretroactive. Bouie v. Kramer, No. CIV S06-1082-GEBGGHP, 2007 WL 2070330 (E.D.Cal. July 13, 2007), Rosales v. Horel, No. 06-CV-2327-JMAJB, 2007 WL 1852186 (S.D.Cal. June 26, 2007), Fennen v. Nakayema, 494 F.Supp.2d 1148 (E.D.Cal.2007), Hally v. Scribner, No. CIV S-04-0828RBBCMKP, 2007 WL 809710 (E.D.Cal. Mar. 15, 2007); see Dropalski v. Stewart, No. C06-5697-FDB/KLS, 2007 WL 963989 (W.D.Wash. Mar. 28, 2007).
[18] The Court discussed the standard of review for a suppression of evidence claim in section IV(A)(2) of this Report and Recommendation.
[19] Please refer to section IV(E)(2) of this Report and Recommendation.
[20] As discussed earlier, Detective Keene discovered that two cell phones had called each other thirty-two times on the morning of the Symbolic robbery. He discovered that the two cell phone numbers were subscribed to two persons under the names of Tim Walker and Crini Ornelas. (Lodgment 2 at 282-84.)
[21] While the California Court of Appeals did address whether the untimely disclosed police report amounted to a prosecutorial error, (Lodgement 5 at 14-18), and explained why the exclusion of the report was harmless to Petitioner, it did not analyze whether the information on the report was properly excluded from evidence by the trial court.
[22] These inconsistencies are discussed earlier in this Report and Recommendation.